**19-11668**

UNITED STATES CIRCUIT COURT
FOR THE 11TH CIRCUIT

---

LAWN ENFORCEMENT AGENCY, INC., AND MICHAEL TROIANO,

Defendants-Appellants,

v.

AUSTIN BROWN,

Plaintiff-Appellee.

---

On Appeal from United States District Court
for the Northern District of Florida, Gainesville Division,
Case No. 17-cv-00305

---

BRIEF OF LAWN ENFORCEMENT AGENCY, INC.,

AND MICHAEL TROIANO,

APPELLANTS

---

ANDREW S. BALLENTINE
ASSOCIATE ATTORNEY

DANIEL F. MANTZARIS
PARTNER

deBeaubien, Simmons, Knight,
Mantzaris & Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Firm Direct: (407) 992-3506

**CERTIFICATE OF INTERESTED PERSONS**

Pursuant to Federal Rule of Appellate Procedure and the rules of this Court, Appellants submits the following Certificate of Interested Persons:

1.      Ballentine, Andrew – Attorney for Appellants

2.      Brown, Austin – Plaintiff/Appellee

3.      Koves, Juliette – Attorney for Defendants/Appellants

4.      Lawn Enforcement Agency, Inc. – Defendant/Appellant

      a.  No publicly held corporation has an ownership interest.

5.      Mantzaris, Daniel – Attorney for Appellants

6.      Massey, Michael – Attorney for Plaintiff/Appellee

7.      Troiano, Michael – Defendant/Appellant

8.      Walker, Mark – United States District Judge

### STATEMENT REGARDING ORAL ARGUMENT

Lawn Enforcement Agency, Inc. ("LEA") and Michael Troiano ("Troiano"), Appellants, respectfully request oral argument. *See* Fed. R. App. P. 34(a); 11th Cir. R. 34-3(c). The district court erroneously concluded that Appellants did not timely pay its employee, the Appellee, and as such, was in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 (1938), *et seq.* ("FLSA"). The district court also erroneously (or abused its discretion when it) denied statutorily appropriate attorneys' fees and costs to Appellants after they prevailed on the two state law claims set forth in the Amended Complaint below. The district court further abused its discretion, by awarding attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), after it erroneously concluded that Appellants were liable under FLSA. Oral argument may assist the Court in its consideration of these important issues.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ............................................................ I

TABLE OF CONTENTS ......................................................................... II

TABLE OF CITATIONS ......................................................................... IV

PRELIMINARY STATEMENT.....................................................................1

JURISDICTIONAL STATEMENT ................................................................2

STATEMENT OF THE ISSUES ..................................................................2

STATEMENT OF THE CASE ....................................................................5

STANDARD OF REVIEW.........................................................................9

SUMMARY OF THE ARGUMENT ...............................................................9

ARGUMENT ........................................................................................13

**I.     The district court erred in concluding that Appellants were in violation of FLSA when Brown was paid more than the federal minimum wage within thirteen days of the pay period ending.**......................................................13

  A. Statutory and Regulatory background ............................................13

  B. Brown received payment in excess of federal minimum wage within a reasonable period of time for the relevant pay period...................................17

C. The district court ruled that Appellants violated FLSA despite Brown receiving the minimum wage for each hour worked for the pay period. .......18

D. The district court erroneously ruled that Appellants violated FLSA and abused its discretion when ruling Appellants failed to demonstrate good faith under the Portal to Portal Act. ..................................................................................21

II.     THE DISTRICT COURT'S AWARD OF ATTORNEYS' FEES AND COSTS TO BROWN CONSTITUTES AN ABUSE OF DISCRETION............................................................26

A. Supplemental briefing on damages and attorneys' fees and costs. ................26

B. The district court erroneously granted attorney's fees and costs to Brown on his FLSA claim.......................................................................................28

III. THE DISTRICT COURT ERRONEOUSLY DENIED APPELLANTS' ENTITLEMENT TO ATTORNEYS' FEES AND COSTS BASED ON FLORIDA LAW ........................................37

A. Section 448.08, Florida Statutes, applies in causes of action for unpaid wages such as Brown's FWMA claim and his claim under Article 24 of the Florida Constitution. ..........................................................................................37

B. Section 768.79, Florida Statutes, is substantive law that the district court should have applied to Brown's FMWA claim but erroneously declined to do so.............................................................................................................40

CONCLUSION........................................................................................................43

CERTIFICATE OF SERVICE.......................................................................................43

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ...................................................44

### TABLE OF CITATIONS

## <u>Cases</u>

\* *ACLU of Ga. v. Barnes*,
168 F.3d 423 (11th Cir. 1999) .................................................. 33, 34, 36

*Acosta v. Bland Farms Prod. & Packing, LLC*,
767 F. App'x 862 (11th Cir. 2019) ........................................................17

*Arriaga v. Fla. Pac. Farms L.L.C.*,
305 F.3d 1228 (11th Cir. 2002) ........................................................ 23, 24

\* *Arroyave v. Rossi*,
296 F. App'x 835 (11th Cir. 2008) ................................................. 10, 13

*Atlantic Co. v. Broughton*,
146 F.2d 480 (5th Cir. 1944) ........................................................ 14, 16

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
450 U.S. 728 (1981).........................................................................13

*Batterton v. Francis*,
432 U.S. 416 (1977).........................................................................22

*Beck v. Fin. Tech. Corp.*,
  Case No. 7:16-cv-01845-LSC, 2017 WL 5668388, at \*1, \*3
(N.D. Ala. Nov. 27, 2017) ...............................................................22

\* *Benavides v. Miami Atlanta Airfreight, Inc.*,
322 F. App'x 746 (11th Cir. 2009) ................................................ passim

*Biggs v. Wilson*,
1 F.3d 1537 (9th Cir. 1993) ..............................................................22

\* *Bivins v. Wrap-It Up, Inc.*,
548 F.3d 1348 (11th Cir. 2008) ................................................... passim

*Brennan v. Heard*,
491 F.2d 1 (5th Cir. 1973) ......................................................15

*Brennan v. Veterans Cleaning Serv., Inc.*,
482 F.2d 1362 (5th Cir. 1973) ................................................15

*Brooklyn Sav. Bank v. O'Neil*,
324 U.S. 697 (1945).................................................... 16, 21, 22

*BUC Int'l Corp. v. Int'l Yacht Council Ltd.*,
489 F.3d 1129 (11th Cir. 2007) ..............................................38

*Carpenter v. Metro. Dade Cnty.*,
472 So. 2d 795, 796 (Fla. Dist. Ct. App. 1985) .....................39

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*,
468 U.S. 1227 (1984)..............................................................22

*Coppage v. U.S. Postal Serv.*,
281 F.3d 1200 (11th Cir. 2002) ................................................9

*Dade Cnty. v. Pena*,
664 So. 2d 959 (Fla. 1995)......................................................38

* *Davis v. Nat'l Med. Enters., Inc.*,
253 F.3d 1314 (11th Cir. 2001) ....................................... 12, 39

* *Design Pallets, Inc. v. Gray Robinson, P.A.*,
583 F.Supp. 2d 1282 (M.D. Fla. 2008)...................................41

* *Dybach v. Fla. Dep't of Corr.*,
942 F.2d 1562 (11th Cir. 1991) ....................................17, 25, 26

*Fox v. McCaw Cellular Commc'ns of Fla., Inc.*,
745 So. 2d 330 (Fla. Dist. Ct. App. 1998)..............................42

*Friedman v. S. Fla. Psychiatric*,
139 F. App'x 183 (11th Cir. 2005) ................................... 25, 26

*Harrington v. RoundPoint Mort. Serv'g. Corp.*
  Case No. 2:15-cv-322-FtM-28MRM, 2018 WL 4100957, at *1
(M.D. Fla. Aug. 9, 2018) .........................................................................41

*\* Hensley v. Eckerhart ,*
461 U.S. 424 (1983)................................................................... 33, 34

*Holliday & Karatinos,*
560 F.3d 1241 (11th Cir. 2009) .............................................................29

*In re Dep't of Labor v. Micro-Chart, Inc.*,
ARB Case No. 98-080, 1998 WL 787288, at *3 (Dep't of Labor Nov. 4, 1998) ...15

*In re Noll*,
172 B.R. 122 (Bankr. M.D. Fla. 1994) ...............................................37

*Jenkins v. Anton*,
922 F.3d 1257 (11th Cir. 2019) .............................................................23

*\* Johnson v. Georgia Hwy. Express, Inc.*,
488 F.2d 714 (5th Cir. 1974) .......................................................... 34, 35

*Klinedinst v. Swift Inv., Inc.*,
260 F.3d 1251 (11th Cir. 2001) ...........................................................22

*Kreager v. Solomon & Flanagan, P.A.*,
775 F.2d 1541 (11th Cir. 1985) ...........................................................30

*Kubiak v. S.W. Cowboy, Inc.*,
  No. 3:12-cv-1306-J-34JRK, 2017 WL 1080000, at *7–9
(M.D. Fla. Mar. 22, 2017).......................................................................38

*Loranger v. Stierheim*,
10 F.3d 776 (11th Cir.1994) ................................................................33

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ..................................................... 12, 41

*Malautea v. Suziki Motor Co., Ltd.*,
987 F.2d 1536 (11th Cir. 1993) ...............................................................37

*Martin v. United States*,
117 Fed. Cl. 611 (2014) ................................................................ 21, 22, 24

*McKusick v. City of Melbourne*,
96 F.3d 478 (11th Cir. 1996) .....................................................................9

*McLaughin v. Richland Shoe Co.*,
486 U.S. 128 (1988)....................................................................................15

* *McMahan v. Toto*,
311 F.3d 1077 (11th Cir. 2002) ......................................................... 40, 42

* *Menchise v. Akerman Senterfitt*,
532 F.3d 1146 (11th Cir. 2008) ........................................................ 12, 40

* *Murray v. Playmaker Serv., LLC*,
325 F. App'x 873 (11th Cir. 2009) .........................................................38

*Olson v. Superior Pontiac-GMC, Inc.*,
765 F.2d 1570 (11th Cir. 1985) ................................................... 13, 14, 18

*Palm Beach Gold Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.*,
781 F.3d 1245 (11th Cir. 2015) ........................................................ 11, 38

*Perkins v. New Orleans Athletic Club*,
429 F. Supp. 661 (E.D. La. 1976)............................................................37

*Resnick v. Uccello Immobilen GMBH, Inc.*,
227 F.3d 1347 (11th Cir. 2000) .................................................................9

*Resolution Trust Corp. v. Hallmark Builders, Inc.*,
996 F.2d 1144 (11th Cir. 1993) ...............................................................31

*Rogers v. City of Troy*,
148 F.3d 52 (2d. Cir. 1998).......................................................................24

*Ruffa v. Saftpay, Inc.*,
163 So. 3d 711 (Fla. 3d 2015)...................................................................28

* *Sahyers v. Prugh, Holliday & Karatinos*,
560 F.3d 1241 (11th Cir. 2009) ................................................. 10, 29, 30

*Ultimate Makeover Salon & Spa, Inc. v. DiFrancesco*,
41 So. 3d 335 (Fla. Dist. Ct. App. 2010) ...............................................39

*United States v. First City Nat'l Bank*,
386 U.S. 361 (1967)...................................................................................9

* *Vega v. T-Mobile USA, Inc.*,
564 F.3d 1256 (11th Cir. 2009) ................................................... 38, 39

*Wolf v. Frank*,
555 F.2d 1213 (5th Cir. 1977) .................................................................35

## Statutes

29 U.S.C. § 201 ...........................................................................................2

29 U.S.C. § 203(m) ...................................................................................15

29 U.S.C. § 206 ............................................................................. 3, 21, 22

29 U.S.C. § 206(b) .....................................................................................13

29 U.S.C. § 216 ............................................................................. 3, 14, 26

29 U.S.C. § 251 ...........................................................................................16

29 U.S.C. § 260 ................................................................................... 3, 19

29 U.S.C. § 603 ...........................................................................................24

33 U.S.C. § 914(e) .....................................................................................16

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1337 ................................................................................. 2

28 U.S.C. § 1927 ........................................................................... 33, 36

Florida Statute Section 57.041 .......................................................... 29

Florida Statute Section 448.008 ........................................................ 27

* Florida Statute Section 448.08 ............................................... passim

Florida Statute Section 448.110 .................................................. 38, 39

* Florida Statute Section 768.79 ............................................... passim

## Other Authorities

Fla. Bar R. Regulating 4-1.2(a) ........................................................ 30

Fla. Bar R. Regulating 4-1.4 ............................................................. 30

Opinion Letter, No. WH-392,
1976 WL 41745, at *1 (Dep't of Labor Aug. 20, 1976) ....................... 15

## Rules

Eleventh Circuit Rule 28-5 ................................................................. 1

Federal Rule of Civil Procedure 4(a)(1)(B) ......................................... 2

Federal Rule of Civil Procedure 5(b) ................................................ 42

Federal Rule of Civil Procedure 54(b) ................................................ 5

Federal Rule of Civil Procedure 68 .................................................. 28

Federal Rule of Civil Procedure 11 .................................................. 27

Federal Rule of Civil Procedure 54(b) ................................................ 6

* Florida Rule of Civil Procedure 1.442 ............................................ 41

\* Florida Rule of Civil Procedure 1.442(c)(2)(B) ....................................................41

\* Florida Rule of Civil Procedure 1.442(d) ...........................................................42

Fla. R. Jud. Admin. 2.516(b)(1)........................................................................41

## Regulations

29 C.F.R. § 516.2(a)(7) ....................................................................................23

29 C.F.R. § 531.32 ...........................................................................................20

29 C.F.R. § 531.35 ...........................................................................................20

29 C.F.R. § 531.36 ...........................................................................................14

29 C.F.R. § 541.603(c).....................................................................................23

29 C.F.R. § 778.106 .........................................................................................16

29 C.F.R. § 779.413(a)(1) ................................................................................14

29 C.F.R. § 790.13 ...........................................................................................25

29 C.F.R. § 790.14 ...........................................................................................25

29 C.F.R. § 790.15 ...........................................................................................25

UNITED STATES CIRCUIT COURT
FOR THE 11TH CIRCUIT

LAWN ENFORCEMENT AGENCY, INC., AND MICHAEL TROIANO,

Defendants-Appellants,

v.

AUSTIN BROWN,

Plaintiff-Appellee.

On Appeal from United States District Court
for the Northern District of Florida, Gainesville Division,
Case No. 17-cv-00305

**BRIEF OF LAWN ENFORCEMENT AGENCY, INC., AND MICHAEL TROIANO,
APPELLANTS**

## PRELIMINARY STATEMENT

This Brief refers to Appellant, LAWN ENFORCEMENT AGENCY, INC., as

"LEA," and Appellant, MICHAEL TROIANO, as "Troiano." The Brief collectively

refers to the Appellants as "Appellants." Appellee, AUSTIN BROWN, is referred

to as "Brown" or "Appellee." Cites to the appellate record are made in the form set

forth by Eleventh Circuit Rule 28-5.

In the action brought by Brown, the district court partially granted Brown's

Motion for Summary Judgment and found that Appellants violated FLSA despite a

supplemental payment to Brown, made within thirteen days of the pay period, that

brought Brown's wages above federal minimum wage for the pay period, which is

inconsistent with this Court's precedent that have held that an up to thirteen day delay in payment is not a violation of FLSA. Consequentially, the district court awarded Brown attorney's fees and costs pursuant to FLSA in an amount inconsistent with the lodestar analysis required by precedent. The district court denied Appellants' entitlement to attorney's fees and costs under Florida law.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action under 28 U.S.C. § 1337 and FLSA, 29 U.S.C. § 201, *et seq.* The district court entered final judgment on April 3, 2019. D52. Appellants filed a timely notice of appeal on April 29, 2019. Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

This Court has held that while FLSA imposes no specific date for payment of wages for a preceding pay period, an eight or ten-day delay is not unreasonable under FLSA's "prompt" payment requirement. This Court has also held that a district court has wide discretion in awarding attorneys' fees but the district court must either award fees on an hour-by-hour method or by an across the board reduction. The Supreme Court has instructed that the degree of success is a critical factor in determining lodestar awards. This Court has ruled that forum-state substantive law is to be applied when a district court sits in supplemental or diversity jurisdiction and that courts of this circuit are bound to follow the law set forth in intermediate

appellate courts, especially those in Florida, if the highest court of the forum-state has not ruled on an issue. The issues in this appeal are:

1.     Whether the district court erred in concluding that, under 29 U.S.C. § 216, it is a violation of 29 U.S.C. § 206 when an employer makes an inadvertent deduction from an employee's wages that result in less than federal minimum wage being received but subsequently rectifies the deduction, such that it is still "prompt" payment in respect to the applicable pay period, thereby resulting in the employee receiving at least minimum wage.

2.     Whether the district court abused its discretion in finding that an employer whose act of deducting amounts from wages, otherwise demonstrated to be in good faith in conformity with and in reliance on applicable guidance for compliance with its statutory or regulatory duties, results in an inadvertent reduction of wages below federal minimum wage that is promptly rectified does not qualify for the defense provided by 29 U.S.C. § 260.

3.     Whether the district court erred in awarding attorney's fees and costs, under 29 U.S.C. § 216, to a prevailing party, notwithstanding issues on appeal related to the erroneousness of that decision, in a manner that fails to: (1) account for the prevailing party's limited success on its claims, including its successful claim, and (2) apply the standards mandated for calculating the lodestar amount under precedent.

4.      Whether the district court erred in awarding quasi-sanctions against the non-prevailing party without notice.

5.      Whether the district court erred in denying a party's entitlement to attorney's fees and costs, under forum-state substantive law, when sitting in supplemental or diversity jurisdiction when the party seeking attorney's fees and costs prevailed on the claim based on forum-state law.

### STATEMENT OF THE CASE

On December 15, 2017, the Brown filed his Complaint alleging violations of the FLSA due to an alleged failure of LEA to pay the minimum wage under federal and Florida law based on an erroneous deduction from his wages for uniforms. (Doc. 1). Appellants partially rectified the inadvertent deduction within ten days of his regular pay date, or thirteen days of the applicable pay period, which brought Plaintiff into compliance with both the Federal and Florida minimum wage. (Doc. 35, p. 15-18). Brown alleged, in Count I, a failure to pay the Federal minimum wage and sought back wages, liquidated damages, attorneys' fees, litigation expenses, and declaratory relief, and in Count II, a violation of Florida minimum wage laws. After Appellants' filed a Motion to Dismiss Brown's Complaint or in the Alternative a Motion for Summary Judgment, (Doc. 2), Brown filed his First Amended Complaint. (Doc. 8). Appellants filed their Answer and Affirmative Defenses on February 6, 2018, asserting several defenses, including payment of the Federal and Florida minimum wage. (Doc. 11).

After both sides filed Summary Judgment Motions (Doc. 25, 26, and 28), on July 23, 2018, the district court correctly found in its Order on Cross-Motions for Summary Judgment[1] that Count II of Brown's Amended Complaint—the Florida

---

[1] The district court did not direct partial entry of judgment under Fed. R. Civ. P. 54(b). (Doc. 35 at 22).

law claim—never should have been brought because Brown received Florida minimum wage prior to Brown's counsel sent a pre-suit demand letter. (Doc. 35, pp. 15-18). The district court ruled in Brown's favor as to Count I—the FLSA claim. (Doc. 35, pp. 9-12). On July 24, 2018, and 25, 2018, the parties filed briefs as to damages and agreed the total amount was $84.14. (Docs. 37–38). Brown filed his brief on entitlement to attorney's fees on August 6, 2018. (Doc. 40). On August 20, 2018, Appellants filed their brief on entitlement to attorney's fees and costs, arguing that they were entitled to fees for: (1) bad faith on the part of Brown and his counsel; (2) prevailing on the Florida minimum wage issue; and (3) entitlement under Fla. Stat. § 448.08, pursuant to a Federal Rule of Civil Procedure 11 finding by the district court, along with offers of judgment made by Appellants, respectively, pursuant to Fla. Stat. § 768.79. (Doc. 41). Appellants also argued that Brown should not be awarded attorney's fees due to bad faith on the part of Brown and his counsel, Brown not being the prevailing party, equitable estoppel, mootness, and results of the case essentially being a tie. (Doc. 41). On August 24, 2018, Brown filed a reply brief. (Doc. 24).

On February 26, 2019, the District Court issued its Order on Damages, Fees, and Costs but specifically stated that, "This Court does not direct partial entry of judgment pursuant to Federal Rule of Civil Procedure 54(b)." (Doc. 47, p. 3). The district court held that Appellants were not entitled to attorney's fees or costs and

that Brown was entitled to them for prevailing on Count I—the FLSA claim. (Doc. 47).  The district court ordered Brown to file a brief on attorney's fees and costs.  *Id.*

On March 5, 2019, Brown filed his brief on attorney's fees and costs therein requesting $76,670 in attorney's fees and $815 in costs. (Doc. 48, p. 19).  Appellants filed a responsive brief on attorney's fees and costs on March 29, 2019, arguing that: (1) the district court should award between $13,500 and $24,495 in attorney's fees because the hourly rate charged by Brown's counsel was too high for the expertise needed in the case; (2) the counsel charged for hours that should not have been billed; (3) the amount of damages being awarded to Brown is very minimal compared to what was initially sought; (4) the fact that an award of attorney fees to a prevailing plaintiff under FLSA is not based upon a finding of the defendant's fault, but rather on the Congressional determination that such a provision was necessary to make an employee whole; (5) the fact that FLSA suits are not meant to become a cottage industry divorced from the benefits they provide; and (6) the fact that fees should not cross over from fair play into punitive measures against defendants who challenge a plaintiff's claim in good faith. (Doc. 51). In addition, the entitlement to fees cannot be a carte blanche license for a plaintiff to outrageously, and in bad faith, run-up attorney's fees without any threat of sanction, as Appellants believe was the case in this litigation.  (Doc. 51). To that end, Appellants included a timeline to assist the district court.  *Id.*

On April 3, 2019, the district court issued its Final Order on Fees and Costs. (Doc. 52). Despite the arguments made to greatly reduce Brown's claimed attorney's fees, the district court ruled that Brown is entitled to $49,696.88 in attorney's fees and $440 in costs. *Id.* at 9–10. The district court found that Appellants put forth a "militant defense," so the district court, after making small reductions in the hours requested by Brown's counsel, only made an across the board reduction in the attorney's fees of twenty-five percent, which amounts to a quasi-sanction without notice. *Id.* at 8–9. Although Appellants put forth a strong defense with reasonable arguments and won the Florida minimum wage portion of the case (Doc. 35, p. 15-18), such defense was necessitated by Brown's unwillingness to negotiate any settlement; Brown even failed to reply when efforts were made by Appellants to settle. (Docs. 41, 51). Other than its "militant defense" statement, the district court offered little explanation on the mere twenty-five percent across-the-board reduction to the lodestar. (Doc. 52).

The district court also misstated the fee expert's opinion offered by Appellants insofar as the fee expert suggesting a fifty-four percent (54%) reduction. *Id.* at 9. To wit, the fee expert stated that his final number would be $24,495 or $23,675, or approximately thirty-two percent of the $76,670 requested by Brown, which is very similar to what Appellants suggested was reasonable. (Docs. 51, 52).

Ultimately, a Clerk's Judgment was issued on April 3, 2019. (Doc. 53). Thereafter, Appellants timely filed their Notice of Appeal. (Doc. 54).

To assist this Court with its review, Appellants point to a timeline of the events in this litigation that incorporated in Appellants' Brief on Attorneys' Fees and Costs. (Doc. 51 at 2–4).

## STANDARD OF REVIEW

This Court reviews ". . . questions of law *de novo*…." *McKusick v. City of Melbourne*, 96 F.3d 478, 482 (11th Cir. 1996). This Court makes an independent determination of the issues without deference to the lower court's conclusions in *de novo* review, and reviews evidence "in the light most favorable to the party opposing the motion." *See, e.g.*, *United States v. First City Nat'l Bank*, 386 U.S. 361, 368 (1967); *Coppage v. U.S. Postal Serv.*, 281 F.3d 1200, 1203 (11th Cir. 2002). This Court "review[s] the award of attorneys' fees for abuse of discretion …." *Bivins v. Wrap-It Up, Inc.*, 548 F.3d 1348, 1351 (11th Cir. 2008). "An error of law is *per se* abuse of discretion." *Id.* at 1351 (citing to *Resnick v. Uccello Immobilen GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000)).

## SUMMARY OF THE ARGUMENT

1.      The district court erred in concluding that Appellants violated the FLSA when Brown was paid more than the federal minimum wage within thirteen days of the pay period ending. Though FLSA requires payment of wages following the

conclusion of a pay period, it "does not specify when payment of wages must be made . . . ." *Arroyave v. Rossi*, 296 F. App'x 835, 836-37 (11th Cir. 2008). Cases cited by Brown indicating a requirement that employers timely pay minimum wages, which some cases understood to require payment on the regular pay date, lack foundation in the language of the FLSA, as evidenced by their failure to cite to the applicable statute in support of their interpreted requirement. *See, e.g.*, *Benavides v. Miami Atlanta Airfreight, Inc.*, 322 F. App'x 746, 747 (11th Cir. 2009)("No requirement exists that wages be paid simultaneously with the end of the pay period."). Furthermore, the deduction for a uniform that inadvertently caused the alleged FLSA violation occurred as a result of the Appellants' Uniform Policy that comported with the requirements of the FLSA, which evinces that Appellants consulted the FLSA and thus meet the good faith requirements of the Portal-to-Portal Act. As such, Appellants did not violate the FLSA when it provided payment greater than minimum wage within thirteen days of the pay period ending.

2. The district court's award of attorneys' fees and costs to Brown constitutes an abuse of discretion and error of law. Contrary to the precedent of this Court, the district court disregarded the bad faith conduct of Appellee's attorney in failing to provide notice prior to filing suit and failing to reply to settlement offers made by Appellants' counsel. *See, e.g.*, *Sahyers v. Prugh, Holliday & Karatinos*, 560 F.3d 1241, 1244 (11th Cir. 2009)(affirming denial of attorneys' fees where

plaintiff's counsel's failed to contact defendant prior to instituting suit). The district court also engaged in little analysis, and in some instances no analysis, regarding the Appellants' entitlement to attorneys' fees. It further failed to properly apply the Johnson factors beyond determining a reasonable hourly rate, which violates this Court and the Supreme Court's method for determining a lodestar amount. *See, e.g.*, *Bivins v. Wrap-It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008)(stating that a district court may either conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board reduction). Accordingly, the district court's Final Order on Fees and Costs must be reversed, or at a minimum, remanded for further proceedings to properly determine the lodestar amount.

3.    The district erroneously denied Appellants' entitlement to attorneys' fees and costs based on Florida law. As a result of Brown's failure to contest Appellants' entitlement to attorney's fees and costs pursuant to Florida Statute Section 448.08 in his reply brief, Brown stands solely on his meritless arguments, as shown below, asserted in his brief on entitlement to attorney's fees and costs. Precedent of this Court permits prevailing parties to recover fees pursuant to Fla. Stat. § 448.08 in federal court. *E.g.*, *Palm Beach Gold Ctr.-Boca, Inc. v. John G. Sarris, D.D.S.*, 781 F.3d 1245, 1259(11th Cir. 2015). As such, Appellants victory on the state law claim entitles Appellants to attorneys' fees under Fla. Stat. § 448.08. *See e.g.*, *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1322 (11th Cir.

2001)(permitting award of attorney's fees under Fla. Stat. § 448.08 when the issue arises from an employment relationship). Furthermore, the district court erroneously failed to follow the precedent of this Court requiring Florida-based district court's follow Fla. Stat. § 768.79, which resulted in the district court improperly denying Appellants' entitlement to attorneys' fees pursuant to its offer of judgment made under Florida law. *See e.g.*, *Menchise v. Akerman Senterfitt*, 532 F.3d 1146, 1150 (11th Cir. 2008)(holding that Fla. Stat. § 768.79 "applies to all civil actions for damages brought in Florida which necessarily includes district and bankruptcy courts that "adjudicate claims under Florida law and are a part of the judicial system" of Florida); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)(holding Fla. Stat. § 768.79 governed where a state law claim predominated over a federal claim). Thus, the district court abused its discretion by denying Appellants' entitlement to attorneys' fees, so the Final Order on Fees and Costs and its Order on Damages, Fees and Costs should both be reversed and remanded for further proceedings.

**ARGUMENT**

**I.  The district court erred in concluding that Appellants were in violation of FLSA when Brown was paid more than the federal minimum wage within thirteen days of the pay period ending.**

A.  Statutory and Regulatory background

Congress enacted the FLSA, in order to establish, among other things, a method for ensuring "[a] fair day's pay for a fair day's work." *Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985)(citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)(internal quotations omitted)); *Arroyave v. Rossi*, 296 F. App'x 835, 836 (11th Cir. 2008)(citing 29 U.S.C. § 206(b)'s requirement that "[e]very employer shall pay to each of his employees . . . who in any work week is engaged in commerce or in the production of goods for commerce . . . not less than the minimum wage rate ...."). While FLSA requires payment of wages following the conclusion of a pay period, it "does not specify *when* payment of wages must be made ...." *Arroyave*, 296 F. App'x at 836–37 (citing supporting case law). As such, this Court has held that there is no requirement that the pay day be the same date as the end of the pay period, only that "a duty [is] on the employer to ensure that the employee *receives* payment of the minimum wage." *See Olson*, 765 F.2d at 1579 (emphasis in original); *see also Benavides v. Miami Atlanta Airfreight, Inc.*, 322 F. App'x 746, 747 (11th Cir. 2009)("No requirement exists that wages be paid simultaneously with the end of the

13

pay period.").  An employer who fails to to ensure its employees receive payment of the minimum wage in a reasonable amount of time following a pay period may be liable under § 216.  *Olson*, 765 F.2d at 1579; *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir. 1944).

The United States Department of Labor has promulgated regulations providing a non-exhaustive list that includes, in pertinent part:

> Retail or service establishment employees are generally compensated (apart from any extra payments for overtime or other additional payments) by one of the following methods:
> (1) Straight salary or hourly rate: Under this method of compensation the employee receives a stipulated sum paid weekly, biweekly, semimonthly, or monthly or a fixed amount for each hour of work.

29 C.F.R. §§ 779.413(a)(1), (b).  For workweeks in which no overtime has been worked by an employee, 29 C.F.R. § 531.36 applies.  Section 531.36 proscribes deductions for "board, lodging, or other facilities" from an employee's wages when they are "furnished [to] the employee at a profit …."  29 C.F.R. § 531.36(a). Similarly, deductions for other articles not constituting items covered under part (a) may be made "if the employee nevertheless received the required minimum wage in cash free and clear …" and the reduction of "the wages of the employee in any such workweek below the minimum required by [FLSA]" are illegal.  § 531.36(b).  The Field Operations Handbook states that "an employee subject to section 6 of the FLSA is considered to be paid in compliance *if the overall earnings for the workweek*

*equal or exceed the amount due at the applicable minimum wage*." Field Operations Handbook, Section 30b02 (emphasis in original). The Field Operations Handbook further provides that "[p]ayment of . . . minimum wage . . . compensation due an employee must *ordinarily* be made at the regular payday for the workweek …." Field Operations Handbook, Section 30b04 (emphasis added). In opinion letters, the Department of Labor has pointed to judicial decisions to establish the basis for payment of the minimum wage on a regular pay date. *See, e.g.*, Opinion Letter, No. WH-392, 1976 WL 41745, at *1 (Dep't of Labor Aug. 20, 1976)(citing *Brennan v. Heard*, 491 F.2d 1, 4 (5th Cir. 1973)*, rejected by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988); *Brennan v. Veterans Cleaning Serv., Inc.*, 482 F.2d 1362 (5th Cir. 1973)(discussing the requirements that wages be paid "free and clear" under 29 U.S.C. § 203(m)). Similarly, the Department of Labor looks back to its earlier opinion letters to establish the timing of payment of wages. *In re Dep't of Labor v. Micro-Chart, Inc.*, ARB Case No. 98-080, 1998 WL 787288, at *3 (Dep't of Labor Nov. 4, 1998)(citing Opinion Letter, No. 63 (Nov. 30, 1961) as the basis for its holding).

Consistent with this Court's jurisprudence, and others, there is no set date or timeframe prescribed by statute or in the federal regulations for payment of wages earned in a preceding pay period. While discussing timely payment of wages, the following provision regarding overtime wages is instructive: "Payment may not be

delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made." 29 C.F.R. § 778.106; *Benavides*, 322 F. App'x at 747; *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 & n.20 (1945) (finding that payment of statutory minimum wage be timely based on public policy concerns outlined by Congress and citing to 33 U.S.C. § 914(e) requiring payment of compensation within 14 days). *But see, e.g., Broughton*, 146 F.2d at 482 (requiring payment of minimum wage on "the regular pay date…").

Employers can be absolved of the liquidated damages component for violations of FLSA under the Portal to Portal Act (29 U.S.C. § 251, *et seq.*). 29 U.S.C. § 260. In order to qualify, the action leading to the alleged violation must, "to the satisfaction of the court," be "in good faith and that [the employer] had reasonable grounds" to believe its actions were not in violation of FLSA. *Id.* This Court recently stated that an employer must satisfy both the subjective[2] and objective[3] components to demonstrate good faith. *Acosta v. Bland Farms Prod. &*

---

[2] "Subjective good faith means the employer had an honest intention to ascertain what the FLSA requires and to act in accordance with it." *Acosta*, 767 F. App'x at 864.

[3] "Objective good faith means the employer had reasonable grounds for believing its conduct comported with the FLSA." *Id.*

*Packing, LLC*, 767 F. App'x 862, 864–65 (11th Cir. 2019)(citing to *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir. 1991)).

B.    Brown received payment in excess of federal minimum wage within a reasonable period of time for the relevant pay period.

As established below, the material facts are exceedingly simple. During the final pay period of 2016, Brown worked 24.25 hours. (Doc. 24-2 at 1) The amount of federal minimum wage due for working 24.25 hours, before taxes, is $175.81. (Doc. 8 at 6, ¶ 16). On January 9, 2017, Brown was paid $83.74. *Id.*; (Doc. 24-2 at 1). On January 16, 2017, Brown received $100.00—contemporaneous to his wages for the pay period of January 4, 2017, to January 10, 2017—to correct the inadvertent deduction from the prior pay period. (Doc. 24-8). This payment was received on January 19, 2017, and was for the uniform deduction from the prior pay period and it had no bearing on the pay period in which it was made given the deduction for uniform rental during that pay period. *Id.*; (Doc. 24-7)(showing pay card activity). Between the wages paid on January 9, 2017, and January 16, 2017, Brown received $183.74 for the pay period of December 28, 2016, to January 3, 2017. (Docs. 24-2; 24-7; 24-8); (Doc. 8 at 6, ¶ 16). The amount of $183.74 is greater than the federal minimum wage owed for 24.25 hours worked during the pay period of December 28, 2016, to January 3, 2017. (Doc. 35 at 11–12). As such, Appellants satisfied their duty "to ensure that [Brown received] payment of the minimum wage . . ." for "each

hour worked during the [applicable] pay period." *See, e.g.*, *Olson*, 765 F.2d at 1578–79.

C.    The district court ruled that Appellants violated FLSA despite Brown receiving the minimum wage for each hour worked for the pay period.

On April 10, 2018, Brown filed his Motion for Summary Judgment and Exhibits. (Docs. 24–25).  Brown argued that he was entitled to summary judgment on both counts based on the payments discussed above as Appellants qualified for enterprise coverage under FLSA and for a violation of Florida's Minimum Wage Act ("FMWA") (Fla. Stat. § 448.110).[4] *See generally* (Doc. 25).  In support of his motion and Appellants' alleged violation of FLSA, Brown cites to various cases that indicate minimum wage must be timely paid and, in some cases, that it is understood to be due on the regular pay date (without a citation to the applicable statute— because none exists). *See generally id.* at 8–10.  As a result, Brown allegedly was due $84.14.   In his motion, Brown implicitly acknowledged that there is *no* requirement under FLSA that the minimum wage be paid other than timely and that the alleged violation was merely a presumption.  *Id.* at 10–11.  To support his contention of an unauthorized deduction, Brown points to Appellants' response to his interrogatories but omits that the deduction was inadvertent and instead alleges

---

[4] Appellants are not contesting whether LEA qualified for enterprise coverage under FLSA on appeal.

that it was intentional, which is inconsistent with the surrounding facts. *Id.* at 11; (Doc. 24-10 at 6–7, ¶ 24). Further, Brown puts forth conclusory arguments as to why Appellants did not satisfy the requirements of 29 U.S.C. § 260 to be absolved from any liquidated damages. *Id.* at 13–14. Upon moving to his FMWA claim, Brown cites back to his analysis for his FLSA claim while acknowledging he failed to provide pre-suit notice as required by statute. *Id.* at 15. Subsequently, Brown provides largely conclusory arguments against some, but not all, of Appellants' affirmative defenses. *Id.* at 18–19.

In response, Appellants filed their Amended[5] Motion for Summary Judgment on April 23, 2018, in which they included attached exhibits and argued Brown received federal minimum wages under FLSA and FMWA. (Doc. 26). Appellants cited the above-referenced facts to establish that Brown had been paid more than the required amount of federal and Florida minimum wage within a reasonable time from the close of the applicable pay period. *Id.* Appellants cited to this Court's decision in *Arroyave* to support their contention that Brown received payment, free and clear, of minimum wage within a reasonable time from the close of the pay period. *Id.* at 11–12. On the good faith components, Appellants produced a signed authorization from Brown to deduct amounts from his compensation for uniforms

---

[5] Appellants filed a Motion to Dismiss, or alternatively a Motion for Summary Judgment. (Doc. 7).

and responses to Brown's discovery requests, which indicate that the deduction was inadvertently in excess of the allowable amount under the Department of Labor's Fact Sheet #16, as cited by Brown.  *Id.* at 12; (Docs. 24-2; 24-8; 24-9; 24-10 at 6–7; 24-11); (Doc. 26 at 15–21).  With Brown's minimum wage for the pay period being $175.81 and with his pre-tax earnings being $266.75, the maximum allowable deduction was $90.93, which is greater than what was withheld from Brown's compensation for the applicable pay period after the inadvertent deduction was corrected so that Brown timely received at least minimum wage.  On the FMWA claim, Appellants pointed out that Brown failed to provide statutory notice and therefore was barred from proceeding on this claim.  (Doc. 26 at 13).  Brown filed a response to Appellants' motion arguing the motion was meritless.  (Doc. 28).

On July 23, 2018, the district court issued its Order on Cross-Motions for Summary Judgment, which granted in part and denied in part both parties' motion for summary judgment.  (Doc. 35).  The district court made findings of fact based on the material facts presented in the competing motions.  *Id.* at 2–4.  Specifically, the district court found Brown was paid $183.74 for the pay period at issue.  *Id.* at 4.  The district court cited to precedent from this Court, and others, and to certain inapplicable statutes based on relevant facts.  *Id.* at 9–10; 29 C.F.R. § 531.35 (proscribing deductions for tools of the trade reducing wages below minimum wage); 29 C.F.R. § 531.32 (finding, *inter alia*, that rental costs for required uniforms

are not "facilities" used in computing wages under § 206(3)(m)).  Ultimately, the

district court concluded that Appellants paid Brown at least minimum wage but that

the uniform deduction was still a violation of FLSA.  (Doc. 35 at 12–14).  The district

court further concluded that Brown's FMWA claim was improper because

Appellants "compensated [Brown] above the Florida minimum wage before

[Appellants] received [Brown's] notice of the pay discrepancy," based on state court

case law, and even if that were wrong, Brown's claim foundered because Brown

received more than the Florida minimum wage after accounting for Medicare and

Social Security withholding.  *Id.* at 14–21.  The district court thereafter ordered

supplemental briefing on the amount of damages under FLSA.  *Id.* at 22.

> D.  The district court erroneously ruled that Appellants violated FLSA and abused its discretion when ruling Appellants failed to demonstrate good faith under the Portal to Portal Act.

As discussed above, the state of the law, in this circuit, as to the provisions of

FLSA and as to when payment is due demonstrates disharmony with the actual

statute itself.  29 U.S.C. § 206.  Courts across the country have generally recognize

that there is no absolute requirement under FLSA for when wages must be paid, only

that it be timely.  *See, e.g.*, *Brooklyn Sav. Bank*, 324 U.S. at 707 & n.20; *Benavides*,

322 F. App'x at 747.  Here, the district court based its ruling on *Martin v. United*

*States*, a case involving a collective action by government employees when payroll

was late due to a partial government shutdown.  117 Fed. Cl. 611 (2014).  The *Martin*

court relied upon the Department of Labor's interpretative regulations in concluding that payment of wages is due only on the regular pay date, while simultaneously noting such interpretations are merely instructive and not binding. *Id.* at 615 (citing *Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977)). However, this Court has noted that resources from the Department of Labor, such as the Field Operations Handbook, are not entitled to *Chevron* deference but may be persuasive if the statute is ambiguous and the interpretation reasonable. *Klinedinst v. Swift Inv., Inc.*, 260 F.3d 1251, 1255 & n.3 (11th Cir. 2001) (citing *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 468 U.S. 1227 (1984)). Ultimately, the *Martin* court relied upon Office of Personnel Management regulations and the Supreme Court's statement that wages be paid "on time" from *Brooklyn Savings Bank* to conclude the government had violated FLSA. *Martin*, 117 Fed. Cl. at 615–18.

The operative language of the statute imposes no such requirement though, only that wages be paid. *See generally* § 206. While courts have generally adhered to the "regular pay date" demarcation in order to have a more judiciable standard, courts nonetheless uniformly acknowledge that FLSA imposes no such requirement. *See, e.g.*, *Biggs v. Wilson*, 1 F.3d 1537, 1539–40 (9th Cir. 1993)(acknowledging the lack of specificity in the statute and creating a judiciable standard for demarcation of an FLSA violation from whole cloth); *Beck v. Fin. Tech. Corp.*, Case No. 7:16-cv-01845-LSC, 2017 WL 5668388, at *1, *3 (N.D. Ala. Nov. 27, 2017)(holding

"late payments are not a prima facie violation of the FLSA unless they are unreasonably late …").  The district court also relied upon this Court's precedent that addressed deductions from wages for farm workers, who also received compensation in facilities, which is factually distinguishable from the case below in which no facilities were provided nor charges for such deducted from Brown's wages.  (Doc. 35 at 10)(citing *Arriaga v. Fla. Pac. Farms L.L.C.*, 305 F.3d 1228, 1235 (11th Cir. 2002)).  The evidence in the record, which was disregarded by the district court, irrefutably demonstrates that Appellants, aside from an inadvertent uniform deduction in the applicable pay period, fully and promptly paid Brown minimum wage in compliance with FLSA.  *Jenkins v. Anton*, 922 F.3d 1257, 1271 (11th Cir. 2019)(citing 29 C.F.R. § 516.2(a)(7) and relating Supreme Court precedent).  Further, unlike the defendant in *P&K Rest. Enter., LLC v. Jackson*, Appellants kept accurate records and their actions demonstrate an understanding of their obligations under FLSA in regard to deductions from compensation for minimum wage compliance. *C.f.* 29 C.F.R. § 541.603(c).

The district court concluded, despite citing precedent on "viewing evidence presented … in the light most favorable to the non-movant," that Appellants' inadvertent deduction of "final" uniform costs on a non-final pay period was a violation of FLSA despite finding Brown received compensation greater than minimum wage for the applicable pay period.  (Doc. 35 at 5, 11–14)(relying on

*Martin* and *Arriaga*). *But see* (Docs. 24-2, 24-8, 24-9, 24-10 at 6–7, 24-11); (Doc. 25 at 13-15)(making conclusory arguments on Appellants' good faith mistake). Appellants acknowledge that courts require judiciable standards, but argue that a "totality of the circumstances" approach is more equitable when a deduction, as the alleged violative act, is inadvertent and rectified within FLSA's prompt payment dictate and in conjunction with a regular pay date. *See, e.g.*, *Benavides*, 322 F. App'x at 746 ("No requirement exists that wages be paid simultaneously with the end of the pay period. We see no support in the FLSA or in case law for Plaintiffs' conflation of the end of the pay period and the regular pay date."); *Rogers v. City of Troy*, 148 F.3d 52, 57 (2d. Cir. 1998)(concluding "First, it is clear that the FLSA requires wages to be paid in a timely fashion. Second, the cases demonstrate that what constitutes timely payment must be determined by objective standards . . . ."). Moreover, FLSA provides a "window of correction" to remediate these types of inadvertent errors for salaried employees. 29 U.S.C. § 603.

Further, the district court abused its discretion by disregarding the evidence in the record demonstrating that the "final" uniform deduction was (1) inadvertent; (2) not actually final as Brown worked in a subsequent pay period; (3) was rectified within a reasonable period of time; and (4) remedied in good faith, as Appellants had no reason to think they were in violation because the deduction, once corrected, resulted in Brown receiving at least minimum wage for the pay period. (Doc. 35 at

12–14). *But see* 29 C.F.R. § 790.15 ("'Good faith' requires that the employer have honesty of intention and no knowledge of circumstances which ought to put him upon inquiry."); 29 C.F.R. §§ 790.13(a), 790.14; (Docs. 24-10 at 6–7; 24-9). Aside from the uniform deduction at issue here, Appellants application of its deduction policy comports with requirements imposed by the FLSA, which evinces Appellants' prior consultation of FLSA's requirements and their creation of a policy to avoid violations. *See, e.g.*, (Doc. 26 at 21)("If terminated or voluntarily quit employee has any unpaid obligations due Lawn Enforcement . . . , the final paycheck will reflect the appropriate deductions according to *legal guidelines* and said specified Company policy.")(emphasis added); (Doc. 24-8 at 2)(deducting $2.60 for uniform rental cost, which does not reduce Brown's wages below minimum wage for the pay period); (Doc. 24-6 at 1); (Doc. 24-2)(deducting only $2.60 for the entire year for "Uniforms" aside from the inadvertent charge). To meet the subjective prong of the good faith exception, the employer maintains the burden of proving that it possessed an "honest intention to ascertain what the Act requires" and that it acted "in accordance" with that "honest intention." *Dybach*, 942 F.2d at 1566. Per *Friedman v. S. Fla. Psychiatric*, this good faith requirement creates "some duty" to investigate potential liability under FLSA, which Appellants evidently performed. 139 F. App'x 183, 186 (11th Cir. 2005); (Doc. 26 at 21). As such, the evidence in the record is sufficient to demonstrate to a jury that Appellants had an honest

intention to comply with FLSA's requirements. But for the inadvertent error, Appellants had reasonable grounds to believe their Uniform Policy comported with applicable legal guidelines, which evinces that Appellants consulted statutory and regulatory requirements limiting deductions from employees' paychecks that necessarily include FLSA. *See* (Doc. 26 at 21)(noting deductions would comply with legal guidelines); (Docs. 24-2, 24-8, 24-9, 24-10 at 6–7, 24-11)(demonstrating a system of applying the Uniform Policy in compliance with FLSA). Accordingly, the district court abused its discretion in finding Appellants "produced *no evidence* that would allow a reasonable jury to determine that Defendants violated the FLSA in good faith" because the record demonstrates that Appellants can satisfy both the objective and subjective test for the "good faith" exemption under the Portal to Portal Act. (Doc. 35 at 13); *Dybach*, 942 F.2d at 1566; *Friedman*, 139 F. App'x at 186.

## II. The district court's award of attorneys' fees and costs to Brown constitutes an abuse of discretion.

### A. Supplemental briefing on damages and attorneys' fees and costs.

In its July 23, 2018 order, the district court directed the parties to file supplemental briefs on the issue of damages under the FLSA claim. (Doc. 35 at 22). Based on the district court's order, as discussed above, Brown argued that the amount of damages due under § 216 was $155.05 plus attorneys' fees and costs. (Doc. 36 at 4). On July 25, 2018, Brown filed his Amended Supplemental Brief

recalculating of the amount of liquidated damages to be $84.14. (Doc. 37). Appellants' argued that the amount of liquidated damages, in light of the district court's (erroneous) denial of their good faith defense, was also $84.14, based on the respective payments. (Doc. 38). Appellants proactively requested that the district court permit the parties to submit briefs or hold oral argument on the entitlement to attorneys' fees based, in part, on having prevailed on the merits of Brown's FMWA claim. *Id.* at 1–2 (citing Fla. Stat. § 448.008 as a basis for statutory entitlement to fees). On July 31, 2018, the district court granted Appellants' request for briefing on the issue of entitlement to attorneys' fees and costs, therein directing Brown to file a brief and Appellants to file a response. (Doc. 39).

On August 6, 2018, Brown filed his brief addressing his entitlement to attorneys' fees and costs under FLSA. *See generally* (Doc. 40 at 1–3). Brown further argued that Appellants are not entitled to attorneys' fees and costs pursuant to Fla. Stat. § 448.08, equitable estoppel, mootness, or Appellants' proposal for settlement under Fed. R. Civ. P. 68. *See generally* (Doc. 40 at 3–25). In response, Appellants argued that they were entitled to attorneys' fees and costs, notwithstanding Brown's arguments to the contrary, based on Brown's filing of his FMWA claim, which was arguably frivolous and as such, violated Federal Rule of Civil Procedure 11. (Doc. 41 at 2–7, 11–12). Appellants further argued their entitlement pursuant to Fla. Stat. § 448.08, titled as "Attorney's fees for successful

litigants in actions for unpaid wages," and states "[t]he court may award to the prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." *See generally id.* at 7–11. Finally, Appellants argued their entitlement pursuant to Fla. Stat. § 768.79 and Fed. R. Civ. P. 68 based on the Offers of Judgment served, and subsequently not accepted, on Brown on or about May 30, 2018. *Id.* at 12, 23–26. Finally, Appellants argued Fla. Stat. § 57.041 entitled them to, at a minimum, tax their costs to Brown for prevailing on the FMWA claim. *Id.* at 13. In response to Brown's arguments to entitlement to attorney's fees, Appellants argued Brown only partially prevailed and as such, a significant reduction was warranted if the district court awarded attorney's fees. *Id.* at 13–17 (citing to *Ruffa v. Saftpay, Inc.*, 163 So. 3d 711, 715 (Fla. 3d 2015)).

B. The district court erroneously granted attorney's fees and costs to Brown on his FLSA claim.

Notwithstanding the arguments set forth in Part I, the district court erroneously ruled Brown was entitled to attorney's fees and costs for prevailing on his FLSA claim as he would receive a judgment on the merits. (Doc. 47 at 1–2). The district court also found that Brown, and his counsel, did not engage in bad faith. *Id.* at 2. The district court concluded that Appellants were not entitled to attorney's fees pursuant to Fla. Stat. § 448.08 and that Appellants' settlement offer, pursuant to Fla. Stat. § 768.79, did not satisfy the statutory requirements. *Id.* As discussed

below, the district court engaged in no analysis regarding Appellants' arguments as to their entitlement to attorney's fees under Florida law for prevailing on the FMWA claim, but instead wholesale adopted Brown's arguments as to Appellants' entitlement to attorneys' fees and costs, which is erroneous. *Id.* The district court made no ruling on Appellants' entitlement to costs as the prevailing party on the FMWA claim under Fla. Stat. § 57.041, as argued in Appellants' brief. (Doc. 41 at 13). The district court thereafter ordered Brown to file a brief on the amount of attorney's fees and costs with appropriate documentation. (Doc. 47 at 3).

As a threshold matter, the district court's order completely disregards the alleged bad faith conduct without any analysis on or a comparison of conduct at issue with how a reasonable attorney would have acted under the circumstances. *See generally* (Doc. 47). In *Sahyers v. Prugh, Holliday & Karatinos*, this Court affirmed the district court's decision to award no attorneys' fees for plaintiff counsel's failure to contact the defendant prior to the suit based on the instructions of the plaintiff. 560 F.3d 1241, 1244 (11th Cir. 2009). While this Court explicitly did not create a pre-suit notice obligation, the inference is clear that the facilitation of pre-suit settlement is an issue of judicial economization in an effort to avoid unnecessary litigation. *Id.* at 1246, n.8. Here, Brown's counsel did contact Appellants prior to filing suit but directed Troiano to personally contact Brown to resolve the matter. (Doc. 24-6 at 2). However, attorneys have an ethical obligation to communicate

certain matters to their clients. R. Regulating Fla. Bar 4-1.2(a)(" Subject to subdivisions (c) and (d), a lawyer must abide by a client's decisions concerning the objectives of representation, and, as required by rule 4-1.4, must reasonably consult with the client as to the means by which they are to be pursued."); R. Regulating Fla. Bar 4-1.4 & comment ("For example, a lawyer who receives from opposing counsel an offer of settlement in a civil controversy … must promptly inform the client of its substance unless the client has previously indicated that the proposal will be acceptable or unacceptable or has authorized the lawyer to accept or to reject the offer."); Comment to Model Rule of Professional Conduct 1.4 (offering consistent comments to Florida's rule). Troiano attempted to contact Brown to resolve the matter but was unable to reach him, which in essence amounted to no attempt to resolve the matter pre-suit by Brown, and only three weeks later, Brown filed the suit below. (Doc. 41 at 3, 18–22); *Sayhers*, 560 F.3d at 1244; *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985); (Doc. 1).

On March 5, 2019, Brown submitted his brief as to attorney's fees and costs in which $76,670.00 was sought for attorney's fees, based on 180.4 hours billed, and $815 in costs, based on the affidavit of an out-of-state fee expert. *See generally* (Doc. 48). Brown's fee expert, who is allegedly familiar with the area of law, makes factual representations inconsistent with the facts established in the record below. (Doc. 48-3 at 11). The time records for Brown's counsel are, for the most part, vague

as to which claim he was working on at the time. *See generally* (Doc. 48-1). *But see Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993)(" before the attorneys submit their fee request, they *must exercise* their own billing judgment to *exclude* any hours that are "excessive, redundant, or otherwise unnecessary.") (emphasis added).

On March 29, 2019, Appellants filed a response to Brown's brief contesting the amount of claimed attorney's fees, and arguing for a significant reduction in any fee award on account of Brown's limited success in his claims; numerous corrections; redundant, unnecessary or duplicative work; time on basic research on FLSA issues; and/or clerical work. *See generally* (Doc. 51 at 1–9). To wit, Appellants identified specifically 40.6 hours in which Brown's counsel was doing basic research on a subject area he, by his own admission, was allegedly well-versed in. *Id.* at 9; (Doc. 48-2 at 2–3, ¶ 5 & 6). Appellants additionally identified time spent correcting mistakes and performing clerical work resulting in a total requested reduction of 44.3 hours. (Doc. 51 at 10). Based on Brown's meritless FMWA claim, Appellants argued for a reduction in the overall fee award and the overall recovery in damages for the FLSA claim. *Id.* at 10–21. Appellants' attached the affidavit of their fee expert—a 29-year veteran of labor and employment law—to the response brief, in which he identified Brown's unreasonable conduct in regard to Appellants' settlement offers, the limited success of Brown's FLSA claim and failure of his

FMWA claim, and the redundancy of the hours (especially in regard to research) in support of his opined 46% reduction in the lodestar amount. *See generally* (Doc. 51-1).

On April 3, 2019, a mere five days later, the district court issued its Final Order on Fees and Costs awarding Brown $49,696.88 in attorney's fees and only $440 in costs. (Doc. 52). The district court determined a reasonable hourly rate for this matter was $375, which is higher than what Appellants argued was appropriate, lower than what Brown alleged was his hourly rate, and within the scope of what Appellants' fee expert opined was reasonable (as noted by the district court). *Id.* at 1–3 & n.2. Based on its analysis of the *Johnson* factors, the district court indicates that a relatively low award of attorney's fees is appropriate but that was not what occurred. *Id.* at 2, n.1; *id.* at 6–10. Next, the district court reduced Brown's claim of 180.4 hours for those deemed "excessive, redundant or otherwise unnecessary . . .," thereby substituting its billing judgment for Brown's. *Id.* at 4. The district court found that all of the hours spent researching should not be reduced but offered no explanation, that the 2.5 hours expended fixing Brown's mistakes should be reduced, and that the 1.2 hours of clerical time should similarly be reduced, which resulted in a reduction of 3.7 hours of 44.3 hours identified in Appellants' brief. *Id.* at 4–5; (Doc. 51 at 9–10); (Doc. 51-1 at 6–8). Finally, the district court, in agreement with Appellants' argument on limited success, applied an across-the-board reduction of

the lodestar calculated from Brown's claimed hours, post-reduction, by 25% based on a finding of a "militant defense" by Appellants and despite its own counsel, raised *sua sponte*, regarding FLSA suits not becoming a "cottage industry" due to the "gross disparity" between claims and fee awards. (Doc. 52 at 6–9).

However, the district court's Final Order on Fees and Costs is erroneous because it (1) fails to reduce hours not "reasonably expended" when calculating the lodestar; (2) applies a "militant defense" standard, which is a thinly veiled application of sanctions under 28 U.S.C. § 1927; and (3) fails to perform analysis is sufficient to support appellate review.

> 1. *The district court's analysis fails to comply with Supreme Court, and this Court's, precedent regarding across-the-board reductions for partial success.*

In *Hensley v. Eckerhart*, the Supreme Court stated that courts calculate a lodestar fee award by "determining . . . the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." 461 U.S. 424, 433 (1983); *Bivins*, 548 F.3d at 1350. Upon determining that a party claimed an unreasonably high amount of hours, "the [district] court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut. *Bivins*, 548 F.3d at 1350 (citing to *Loranger v. Stierheim*, 10 F.3d 776, 783 (11th Cir.1994)); *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)(stating "Courts are not authorized to be generous with the money of others, and it is as much

the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount is awarded.").  The hour-by-hour analysis requires use of the *Johnson* factors.  *Bivins*, 548 F.3d at 1350 (citing to *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)); *Barnes*, 168 F.3d at 428 ("While the court may rely on affidavits and its own knowledge and expertise, where specific objections are made a court's order should consist of more than conclusory statements.").  After the initial analysis is complete, a downward reduction can be performed "only if the prevailing party was partially successful in its efforts." *Bivins*, 548 F.3d at 1350–51; *see also Hensley*, 461 U.S. at 436–37 ("There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."). "[T]he most critical factor is the degree of success obtained" when determining the amount of a fee award.  *Hensley*, 461 U.S. at 436.  The district court, however, must adhere to either the hour-by-hour approach or the across-the-board reduction approach to calculate a fee award. *Bivins*, 548 F.3d at 1351–52.

Here, the district court conducted a review of reasonable compensable hours by performing an hour-by-hour analysis focusing only on the hours identified by Appellants in their response for which it perceived as unreasonable and appears to have not considered the remaining hours.  (Doc. 52 at 4).  *But see Barnes*, 168 F.3d

at 428. The analysis by the district court in the Final Order on Fees and Costs is erroneous because the district court failed to actually apply the *Johnson* factors beyond determining a reasonable hourly rate. (Doc. 52 at 3)("Based on its own experience as an attorney and a judge (state and federal), as well as a consideration of the *Johnson* factors, this Court concludes that a reasonable hourly rate for Plaintiff's counsel in this case is $375 per hour."); *id.* at 4–6 (determining the amount of reasonable compensable hours without any consideration of the *Johnson* factors); *see also Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir. 1977)("We cannot ignore the findings of the trial judge that the issues were neither novel nor unusually complex and that the chances of success were not remote. With these findings it is hardly conceivable that a judge in the exercise of sound discretion would have approved fifty percent of the recovery as a contingent fee. Indeed, Judge Atkins declined to follow that suggestion, as well he should have."). The Final Order on Fees and Costs is erroneous because it is in direct contravention of what this Court, and the Supreme Court, has prescribed for determining a lodestar amount because the district court failed to apply the *Johnson* factors to both the hourly rate and the reasonably compensable hours. (Doc. 52); *see, e.g.*, *Bivins*, 548 F.3d at 1350–52. On that basis alone, the district court's Final Order on Fees and Costs should be reversed.

The district court's erroneous lodestar determination did not stop there. The district court, in rejecting Appellants' request for a reduction in the amount of hours

expended on redundant research, simply concluded, without any explanation whatsoever, that "this Court disagrees that this time should be reduced." (Doc. 52 at 4). *But see Barnes*, 168 F.3d at 428 ("A district court should be mindful of its obligation to produce an order on attorneys fees that allows for 'meaningful review' by articulating the decisions made and supplying principled reasons for those decisions."). This too, is in direct contravention of this Court's plain requirement in *Bivins* and *Barnes*, that "[a]ny reductions to the requested hours must be concisely and clearly explained to allow for appellate review; otherwise, we must remand." *Id.*; *Bivins*, 548 F.3d at 1351 (citing to *Loranger*, 10 F.3d at 783). Accordingly, the district court's Final Order on Fees and Costs must be reversed, or at a minimum, remanded for further proceedings consistent with this Court's requirements for determining the lodestar. Alternatively, this Court may apply its own judgment to the lodestar award and modify it to correct the district court's error. *Barnes*, 168 F.3d at 431–32.

> 2. *The district court's application of its "militant defense" is really sanctions pursuant to 28 U.S.C. § 1927 without due process.*

In its Final Order on Fees and Costs, the district court reasoned that Appellants had engaged in a "militant defense," and as such, it appears the district court sanctioned Appellants on that basis. (Doc. 52 at 8). The district court concludes, absent analysis, that Appellants' failed to offer "a reasonable settlement and attempt

to mitigate attorney's fees." *Id.* However, the record plainly includes the numerous attempts by Appellants to settle the case in the early stages, to which Brown never once replied. (Doc. 41 at 18–26). "The old saying 'it takes two to tango' is equally applicable to compromises." *In re Noll*, 172 B.R. 122, 124 (Bankr. M.D. Fla. 1994). As discussed below, and in light of Part I, Appellants' offers of judgment, pursuant to Fla. Stat. § 768.79, were reasonably made based on Appellants' evaluation of liability and are enforceable on Brown's FMWA claim under Florida law. As noted by the *Perkins* court, and equally applicable here, it is the duty of both parties to be reasonable. *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 666–67 (E.D. La. 1976). Unlike the defendant in *Malautea v. Suziki Motor Co., Ltd.*, Appellants received no notice of the district court's impending quasi-sanction. 987 F.2d 1536, 1544 (11th Cir. 1993). Therefore, the district court's lodestar amount was inflated due to its erroneous application of sanctions against Appellants and should be reversed or modified by this Court.

## III. The district court erroneously denied Appellants' entitlement to attorneys' fees and costs based on Florida law

A. <u>Section 448.08, Florida Statutes, applies in causes of action for unpaid wages such as Brown's FWMA claim and his claim under Article 24 of the Florida Constitution.</u>

It is uncontroverted that Appellants made several attempts to settle with Brown that culminated in the May 30, 2018 Offers of Judgment. As a result of

Brown's failure to contest Appellants' entitlement to attorney's fees and costs pursuant to Fla. Stat. § 448.08 in his reply brief, Brown stands solely on his meritless, as shown below, arguments put forth in his brief on entitlement to attorney's fees and costs. (Doc. 40 at 4–19); *see BUC Int'l Corp. v. Int'l Yacht Council Ltd.*, 489 F.3d 1129, 1140 (11th Cir. 2007). Contrary to the holding of *Kubiak v. S.W. Cowboy, Inc.*, this Court has found, based on the same authority, that attorney's fees may be awarded to a prevailing party, pursuant to Fla. Stat. § 448.08. No. 3:12-cv-1306-J-34JRK, 2017 WL 1080000, at *7–9 (M.D. Fla. Mar. 22, 2017); *Murray v. Playmaker Serv., LLC*, 325 F. App'x 873 (11th Cir. 2009).

For similar reasons as those discussed above, substantive Florida law applies to state claims while federal law applies to federal claims. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1259 (11th Cir. 2015)(holding that in pendent jurisdiction, federal courts apply the substantive law of the forum state as well as federal procedural law). Here, Brown asserted a state law claim for unpaid wages pursuant to Fla. Stat. § 448.110. (Docs. 1, 8). Section 448.08 is purely remedial based on an action for back wages pursuant to some other statute or under the common law. *Murray*, 325 F. App'x at 874–75 (citing *Dade Cnty. v. Pena*, 664 So. 2d 959 (Fla. 1995)); *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1270–71 (11th Cir. 2009). For instance, this Court held that attorney's fee award for unpaid wages based on a breach of contract claim was appropriate under

Fla. Stat. § 448.08. *Davis v. Nat'l Med. Enters., Inc.*, 253 F.3d 1314, 1322 (11th Cir. 2001)(holding that attorney's fee award pursuant to Fla. Stat. § 448.08 based on monies owed that derive from an employment relationship, such as the one here, "would be considered 'wages' under F.S. 448.08."). While the plaintiff's claim in *Ultimate Makeover Salon & Spa, Inc. v. DiFrancesco*, based on Fla. Stat. § 448.110, was ultimately replaced with other claims for wages, the court's opinion is still instructive here. 41 So. 3d 335 (Fla. Dist. Ct. App. 2010). The *DiFrancesco* court noted that awarding attorney's fees to a prevailing defendant is appropriate under Florida law in circumstances that render the plaintiff's claim untimely, such as the lack of pre-suit notice here or the statute of limitations defense there. *Id.* at 338 (citing *Carpenter v. Metro. Dade Cnty.*, 472 So. 2d 795, 796 (Fla. Dist. Ct. App. 1985)).

Here, the facts are essentially the same as *Davis* and *Carpenter*. *Davis*, 253 F.3d at 1316–18; *Carpenter*,472 So. 2d at 796. Brown sought unpaid wages derived from his employment relationship with Appellants and it does not matter what form it took, it is still an action for wages under Florida law. *See Vega*, 564 F.3d at 1270–71. Appellants prevailed on the state law claims due to Brown's failure to serve a pre-suit notice before Appellants' rectified the alleged deficiency. (Doc. 35 at 18–21). Based on the above-referenced precedent from this Court, the district court

erroneously concluded that Appellants were not entitled to attorney's fees under Fla. Stat. § 448.08.

B. Section 768.79, Florida Statutes, is substantive law that the district court should have applied to Brown's FMWA claim but erroneously declined to do so.

Brown argued that Appellants' offers of judgment were not made in good faith and as such, should be rejected. *See generally* (Doc. 44 at 8–10). The district court adopted this analysis without comment but this is contrary to binding Florida legal precedent that the district court must follow. *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002)("we are bound to follow decisions of the state's intermediate appellate courts unless there is no persuasive indication that the highest court of the state would decide the issue differently."). In *Menchise v. Akerman Senterfitt*, this Court found that Fla. Stat. § 768.79 "applies to *all* civil actions for damages brought in Florida" that necessarily includes Florida-based district and bankruptcy courts "because they adjudicate claims under Florida law and are a part of the judicial system" of Florida. 532 F.3d 1146, 1150 (11th Cir. 2008) (emphasis added).

This Court ultimately held that settlement offers under Fla. Stat. § 768.79 are not preempted by Rule 68. *Id.* at 1153. The viability of Appellants' offers pursuant to § 768.79 is even clearer based on the district court's analysis in *Design Pallets, Inc. v. Gray Robinson, P.A.*, in which the court reasoned that offers under § 768.79 applied only to state law claims and not to federal claims "by virtue of the Supremacy

Clause and the Costs Statute.…" 583 F.Supp. 2d 1282, 1287 (M.D. Fla. 2008)(holding "§ 768.79 applies only to the Florida claims" when the court has jurisdiction under federal question and supplemental or diversity jurisdiction); *Harrington v. RoundPoint Mort. Serv'g. Corp.* Case No. 2:15-cv-322-FtM-28MRM, 2018 WL 4100957, at *1 (M.D. Fla. Aug. 9, 2018). Conveniently, this resolves the issue with the validity of the proposals on the FLSA claim under this Court's holding in *Lynn's Food Stores, Inc. v. United States*. *See generally* 679 F.2d 1350 (11th Cir. 1982). Unlike the *Design Pallets* court that handled only the federal claim, the district court here disposed of both the federal claim and the predominate state law claim. (Docs. 8, 35, 47, 52); *Design Pallets*, 583 F.Supp. 2d at 1287. As such, Appellants' offers of judgment were validly made on Brown's FMWA claim. The remaining issue is whether they are enforceable, which is a matter of Florida law.

Under Florida law, parties are required to include that an offer would resolve all damages that would otherwise be awarded in a final judgment in the action in which the proposal is served. Fla. Stat. § 768.79(2); Fla. R. Civ. P. 1.442(c)(2)(B). Appellants' proposals satisfy that requirement along with the other requirements under both the statute and the rule as far as the content of the proposal. (Doc. 41 at 23–26); Fla. Stat. § 768.79; Fla. R. Civ. P. 1.442. The offers were uncontrovertibly served via e-mail to Brown's counsel, which is proper under Florida law. Fla. R. Jud. Admin. 2.516(b)(1)(providing service by e-mail is valid); Fla. R. Civ. P.

1.442(d)(requiring service but not filing until enforcement is necessary); Fed. R. Civ. P. 5(b)(permitting service by e-mail). As Brown failed to timely accept Appellants' offers, the only remaining determination is whether the offers were made in good faith. This Court stated in *Toto* that Fla. Stat. § 768.79 offers "can be valid if the offerors have a reasonable basis *at the time* of the offer to conclude that their exposure was nominal." 311 F.3d at 1083 (citing to *Fox v. McCaw Cellular Commc'ns of Fla., Inc.*, 745 So. 2d 330, 332 (Fla. Dist. Ct. App. 1998)) (emphasis added). This Court further explained that:

> The good faith requirement of § 768.79(7)(a) does not "demand that an offeror necessarily possess, at the time he makes an offer or demand under the statute, the kind or quantum of evidence needed to support a judgment. The obligation of good faith merely insists that the offeror have some reasonable foundation on which to base an offer.

*Id.* As evinced by the district court's order granting Appellants' Amended Motion for Summary Judgment as to Brown's FMWA claim, Appellants had a reasonable foundation on which to base their nominal offer as to their potential liability. (Doc. 35); (Doc. 41 at 23–26). Given that Brown's FMWA claim was the predominate claim among the two claims in the Amended Complaint, Appellants are entitled to attorney's fees and costs. *Toto*, 311 F.3d at 1083–84.

In light of the foregoing, it is abundantly clear that the district court abused its discretion by denying Appellants' entitlement to attorney's fees pursuant to the offers of judgment made under Florida law. As a result, the district court's Final

Order on Fees and Costs and its Order on Damages, Fees and Costs should both be reversed and remanded for further proceedings consistent with this Court's precedent.

## CONCLUSION

For the foregoing reasons, the orders of the district court regarding Appellants' Amended Motion for Summary Judgment, Appellants' entitlement to attorney's fees and costs, and awarding attorney's fees and costs to Brown should be reversed (or modified by this Court).

Dated July 10, 2019

Respectfully submitted,

*/s/ Andrew S. Ballentine*
Andrew S. Ballentine (Fla. Bar No. 118075)
ABallentine@DSKLawGroup.com
Daniel F. Mantzaris (Fla. Bar No. 562327)
DMantzaris@DSKLawGroup.com
deBeaubien, Knight, Simmons,
Mantzaris and Neal, LLP
332 North Magnolia Avenue
Orlando, Florida 32801
Telephone: (407) 422-2454
Facsimile: (407) 849-1845
Attorneys for Appellants, LAWN ENFORCEMENT AGENCY, INC., and MICHAEL TROIANO

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, I electronically filed the foregoing

Motion with the Clerk of the Court using the CM/ECF system, which will serve copies on all parties of record. I further certify that on the same date I have caused seven copies of the foregoing brief to be delivered to the Clerk of the Court.

Service was accomplished on the same date on the following overnight delivery:

> Michael Massey
> 855 East University Ave.
> Gainesville, FL 32601

*/s/ Andrew S. Ballentine*
Andrew S. Ballentine

July 10, 2019

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. I certify that this Response complies with the applicable type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i) since this Motion includes 11,064 words (pursuant to the word count function in Microsoft Word) excluding the Table of Contents and Table of Citations.

2. I further certify that this response complies with the type-style and typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6). This Motion was prepared in Microsoft Word 2013 using a 14-point Times New Roman font, which is a proportionally spaced typeface.

*/s/ Andrew S. Ballentine*
Andrew S. Ballentine
